## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| R. DOUGLAS EMLEN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 09-cv-1059 |
| CATERPILLAR, INC., | ) |
| Defendant. | ) |

## O P I N I O N and O R D E R

Before the Court is the Motion for Summary Judgment filed by Defendant, Caterpillar, Inc. (Doc. 21). The Motion is GRANTED.

### BACKGROUND

The following facts are undisputed. During the relevant time period, Plaintiff was employed by Defendant as a Division Manager in Caterpillar's Dealer Business Systems Group. (Defendant's Statement of Undisputed Material Facts (DSUMF) 3). Plaintiff reported to the Director of Dealer Services, Jim Roppa, who in turn reported to Vice President, John Heller. (DSUMF 3). In 2004, Caterpillar entered into an agreement with a company named PTCom to begin a trial period to test out a partnership between the two companies. (DSUMF 9). During the trial period, Caterpillar and PTCom were engaged in a venture related to internet phone calls called Project Water. (DSUMF 8). Plaintiff was designated as the project manager. (DSUMF 12).

1

Project Water was not successful: immediately after entering into the agreement, PTCom "missed deliverables, failed to pay invoices, and was otherwise not in compliance with its obligations pursuant to the proof of concept agreement." (DSUMF 10). Caterpillar also did a background check on the owner of PTCom, David Goodwin, which revealed "potentially troubling information." (DSUMF 11). Plaintiff was removed from his position as project manager in mid-2004 and Caterpillar began to "disengage" from Project Water thereafter (the project did not end until mid-2005). (DSUMF 9 and 12).

Caterpillar reviews the performance of its employees annually. (DSUMF 19). The evaluation scale is one to five with one being the best and five being the worst. (DSUMF 19). A rating of three also has three subratings, A, B, and C; A being the best and C being the worst. (DSUMF 19). In Plaintiff's 2004 evaluation, his performance was rated "3B" by his immediate supervisor, Roppa. However, Roppa's supervisor, Heller, who approves the reviews, instructed that the rating be changed to "3C" because Plaintiff "demonstrated lack of judgment, proper communication, and he failed to deliver on some of his goals." (DSUMF 20). The change in rating had no impact on Plaintiff's salary. Plaintiff was again evaluated in October, 2005. (DSUMF 28). He was given a performance rating of "5" (i.e. worst) and was "removed from his leadership position" because "he misled his management team and used poor business judgment in violation of Caterpillar's Code of Conduct." (DSUMF 28). The October 2005 rating and decision to remove Plaintiff from his position was made by Roppa, Heller, Paul Joseph, Heller's subordinate, and in

2

conjunction with human resources. (DSUMF 30). Plaintiff was then placed in the "priority placement pool," a 60-day employment holding position whereby Caterpillar would attempt to locate another position in the company, and, if unsuccessful, would terminate Plaintiff's employment after 60 days. (DSUMF 31). Plaintiff, however, elected to retire after receiving the October, 2005 evaluation. (DSUMF 32). According to Defendant, Plaintiff's evaluations and the decision to essentially terminate his position was related to Plaintiff's relationship with PTCom and its owner, Godwin.

The undisputed evidence reveals that Plaintiff's son, Zach, was employed by PTCom in 2004 (while Plaintiff was project manager of Project Water). (DSUMF 14). Plaintiff also co-owned two companies, Trilogy and 4D Sports, with Godwin, and Tracy Daniels, which were incorporated in January, 2005. (DSUMF 15 and 16). Both of Plaintiff's sons, Zach and Brandon, were employed by Trilogy and 4D Sport, although they received paychecks from PTCom. (DSUMF 17). In April, 2005, Heller received an anonymous letter accusing Plaintiff of various acts including misuse of Caterpillar personnel, forcing PTCom to hire his son, and the use of Caterpillar funds and resources for personal use. (DSUMF 22). Heller forwarded the letter to Caterpillar's Office of Business Practices which conducted an investigation. (DSUMF 23). Heller received a second letter, this time from Godwin, in September, 2005 which accused Plaintiff of forcing PTCom to hire his son, seeking cash payments from PTCom, starting Trilogy and 4D Sports, working for those two ventures during Caterpillar working hours, and "stealing confidential

Caterpillar documents in an effort to extort money and jobs for his sons." (DSUMF 24). This letter also was forwarded to the Office of Business Practices which conducted an investigation. (DSUMF 25). During this second investigation, Plaintiff was suspended with pay. (DSUMF 25). The result of the investigation was a determination that while Plaintiff was not engaged in a "direct conflict of interest," his joint ventures with Godwin and activities gave the "appearance of a conflict of interest." (DSUMF 26 and 27).[1]

Plaintiff believes that the only person at Caterpillar who discriminated against him on account of his age is Heller, who is 3 years younger than Plaintiff. (Emlen Dep. p. 67). Plaintiff has this belief based on two conversations with Heller, between January and July, 2005. In one conversation, Plaintiff describes Heller's comments as:

> He just said that, you know, some of the guys that work here at Caterpillar that have those long careers have different management styles that may not fit with the direction that we're going because they come from the old school, so that career longevity is something that he looks at. (Emlen Dep. p. 57).

In that same conversation, Heller also "made reference to my [Emlen's] gray hair in the conversation of being of gray hair." (Emlen Dep. pp. 64-65). Heller also, apparently, has gray hair. In a separate conversation during the same time period, Heller also referred to Plaintiff as "Dr. Emlen:"

---

[1] It is undisputed that Plaintiff's employment was governed by a Code of Worldwide Business Conduct which states that: "We must not engage in activities that create, or even appear to create, conflict between our personal interests and the interest of the company" and "We will not seek to influence others, either directly or indirectly by any measure that is unethical or will tarnish our reputation for honesty and integrity. Even the appearance of such conduct must be avoided." (DSUMF 5).

4

> He [Heller] walked up to me. I was one of the first ones in the room, the room being when it would seat two to three hundred people, and he said Dr. Emlen, he said, I see you got here early, glad to see that. He said, you know, us old guys need to get here ahead of time. (Emlen Dep. p. 66).

### STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." *Warsco v. Preferred Tech. Group*, 258 F.3d 557, 563 (7th Cir. 2001); *See also Celotex Corp.*, 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable." *Bank Leumi Le-Isreal, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of law. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, in ruling on a motion for summary judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When a plaintiff alleges age discrimination, "'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.'" *Reeves v. Sanderson Plumbing Products Inc.,* 530 U.S. 133, 141 (2000) (*quoting Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). In other words, a plaintiff's age must have "'actually played a role in [the employer's decision making] process and had a determinative influence

6

on the outcome.'" *Id.*; *See also Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

**DISCUSSION**

A plaintiff may prove intentional discrimination directly, through direct or circumstantial evidence, or indirectly through the familiar burden-shifting method enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Antonetti v. Abbott Laboratories*, 563 F.3d 587, 591 (7th Cir. 2009); *Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1053 (7th Cir. 2006); *Grimm v. Alro Steel Corporation*, 410 F.3d 383, 385 (7th Cir. 2005). Direct evidence can include admissions from his employer that his employment was terminated because of a protected trait or a mosaic of circumstantial evidence that would lead a jury to believe that he was discriminated against because of his age. *Luks,* 467 F.3d at 1053. Such circumstantial evidence can include:

> 1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.
>
> *Sun v. Board of Trustees of University of IL*, 473 F.3d 799, 812 (7th Cir. 2007).

In order to proceed under the indirect burden-shifting method, a plaintiff must first make out a *prima facie* case of discrimination. *Id.* A plaintiff must show that he is a member of the protected class, that he was meeting his employer's

legitimate expectations, that he suffered an adverse job action, and that similarly situated persons were treated more favorably. *See Hemsworth.*, 476 F.3d at 492; *Antonetti*, 563 F.3d at 591. Once Plaintiff has established his *prima facie* case, a defendant must produce a legitimate non-discriminatory reason for the employment decision. *Hemsworth*, 476 F.3d at 492; *Antonetti*, 563 F.3d at 591. If the defendant can offer such a reason, the burden then shifts back to the plaintiff to prove the defendant's reason is merely a pretext for discrimination. *Hemsworth*, 476 F.3d at 492; *Antonetti*, 563 F.3d at 591. To show pretext, a plaintiff must do more than show that the defendant's decision was mistaken or foolish, he must show that the defendant did not honestly believe in the reasons offered. *Kodl v. Board of Educ. School Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007); *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006). That is, a plaintiff must show that defendant's reason was dishonest and that its true reason was based on discriminatory intent. *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010).

Under either theory, Plaintiff has failed to show intentional discrimination. Plaintiff has presented no direct evidence of discrimination – that is, there is no smoking gun or admission. Plaintiff only has attempted to show circumstantial evidence of intentional discrimination. This evidence consists of the statements made by Heller and Plaintiff's belief that the reasons for his termination are a fabrication.

Statements that are "isolated" and "no more than stray remarks in the workplace" cannot establish that a decisionmaker is motivated by a prohibited reason. *Hemsworth,*, 476 F.3d at 491 (quotation marks and citations omitted). A comment can, however, show a discriminatory intent if it was:

(1)   made by the decision maker,

(2)   around the time of the decision, and

(3)   in reference to the adverse employment action.

*Id.* The comments made by Heller, even if Plaintiff did interpret them as showing an age-bias are, at most, such isolated and stray comments that can only be considered social banter. *See Mills v. First Federal Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 841-841 (7th Cir. 1996) (noting that subjective beliefs of a plaintiff are insufficient to withstand summary judgment). No reasonable jury would find that such statements are an indication of a prohibited animus. As to the first comment related to "old school" style, such a comment is not necessarily based on age. The comment related to "gray hair" appears facetious because Heller, who is only 3 years younger than Plaintiff, also has gray hair. Similarly, the comment referring to Plaintiff as "doctor" is innocuous and the "old guys" statement is a comment made by Heller about himself in addition to Plaintiff -- again, facetious. None of these statements in isolation or together raise an inference of age discrimination.

The comments themselves were also only made by *one* of the decisionmakers who elected to terminate Plaintiff's employment. There is no dispute that in addition to Heller, Roppa and Joseph and human resources made the decision to

remove Plaintiff from his position. Plaintiff has presented no evidence that Heller unduly influenced the independent judgment of Roppa and Joseph such that they merely rubber-stamped Heller's own decision to terminate Plaintiff's employment. To be sure, Heller was the senior employee of that group and Roppa's and Joseph's supervisor; however, Plaintiff provides no evidence from which any jury could conclude that Roppa and Joseph did not exercise their own independent judgment.[2] The comments also do not appear to be around the same time as the termination. Plaintiff was vague as to when the statements were made, indicating that they were made sometime prior to June, 2005. Thus, the comments were made at least four months prior to the adverse action – not immediately prior to Plaintiff's termination. There is also no showing that the comments were made in reference to Plaintiff's termination. Therefore, Plaintiff has presented no direct evidence of discriminatory animus.

These comments also cannot create a sufficient mosaic of circumstantial evidence nor can Plaintiff prevail on the burden-shifting method. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641-642 (7th Cir. 2008) (noting that "the distinction between the two avenues of proof is vague" (citations and quotation marks omitted)). Plaintiff only points to these statements as exhibiting any sort of discriminatory animus – there are simply no other pieces to the mosaic. *See e.g. Paz v. Wauconda Healthcare and Rehabilitation Centre, LLC.*, 464 F.3d 659, 665-666

---

[2] Plaintiff has presented no evidence or argument that would support a "cat's paw" theory: that "the employer's ill motives likely had an influence on the purportedly independent decisionmaker's thought process." *Hill v. Potter*, 625 F.3d 998, 1002 (7th Cir. 2010).

(7th Cir. 2006) (the Court indicated that while commentary may not be sufficient direct evidence, they could be considered, along with other evidence, in determining whether a plaintiff has presented sufficient circumstantial evidence of discriminatory intent). In order to create a mosaic of evidence, Plaintiff argues his was the only evaluation that was changed, that he was meeting Defendant's expectations, and that he was replaced by an employee who was ten years his junior.

With respect to the reasons for Plaintiff's termination, Plaintiff argues that no reasonable jury would "believe that Caterpillar would fire a top rated manager for performance deficiencies in 2005." Plaintiff then goes on to outlines that he did not violate the Code of Conduct and that the "appearance of impropriety" reasoning offered by Defendants is sufficiently amorphous to be beyond belief. First, there is no showing that Plaintiff was "top-rated."[3] Plaintiff has not presented any evidence that the "5" rating he received on his evaluation was not warranted – he merely argues that his evaluation was changed. Second, Plaintiff has not shown that he was meeting his employer's legitimate expectations nor has he shown that Defendant's reasons for his termination are a pretext for discrimination. There is no dispute that Plaintiff was entangled with Goodwin, that he was told by Roppa in 2004 to disentangle himself (Roppa Dep. pp. 61-63), and that he nonetheless

---

[3] Plaintiff indicates that his subordinate, Mike Allen, thought he was a good supervisor. However, "the proper inquiry mandates looking at [plaintiff's] job performance through the eyes of her supervisors at the time of her suspension and termination." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). There is no showing that the results of the investigation were fabricated or that Defendant did not honestly believe that Plaintiff's conduct created an appearance of impropriety

continued his associated with Goodwin. There is also no question that the Office of Business Practices, which is unrelated and not controlled by Heller, determined that Plaintiff violated the Code of Worldwide Business Conduct by creating the appearance of impropriety. Plaintiff makes no effort to create an inference that the Office of Business Practices made this determination because of an age related animus towards Plaintiff. Moreover, Plaintiff has made no effort to show that a supervisor cannot rely on this conclusion in making the decision to terminate an employee. While Plaintiff may believe that his conduct was completely appropriate, there is simply no showing that Defendant is lying or otherwise fabricating its reasons for terminating Plaintiff's employment. And, there is certainly no evidence from which a reasonable jury would conclude that his employment would not have been terminated but for his age.

The persons Plaintiff compares himself to are Mike Allen, Mike Zachman, Tom Binns, and Kim Weinzeril. None of these employees were investigated by the Office of Business Practices nor is there any evidence that these employees violated the Worldwide Code of Business Conduct.

Only two persons are highlighted by Plaintiff as being similarly situated. Zachman also was a division manager and presumably at the same pay grade during the time in question. Plaintiff believes Zachman was treated more favorably than Plaintiff because he was made a department head, of the auditing group, at some point in 2005 (Plaintiff's employment was terminated at the end of 2005). (Emplen Dep. pp. 148-149). Plaintiff believes that he was qualified for that job;

however, he did not know the requirements of the job, was not privy to Zachman's resume (although he had a belief that Zachman was not qualified), and does not know who made the decision to promote Zachman to department head. (Emlen Dep. 150-152). At the time of Plaintiff's deposition, in 2010, Zachman was in his late 40's (according to Plaintiff). (Emlen Dep. p. 148). The other person highlighted by Plaintiff is Wienzeril who, at the time was a planning manager and who reported to Plaintiff. (Emlen Dep. p. 160). Plaintiff indicates that Wienzeril also was in her late 40's at the time of the deposition. (Emlen Dep. 160). Plaintiff believes that she was treated better because at some point in 2005, Plaintiff was asked by Roppa to modify her already "good" evaluation to a better one in order to make her a more desirable executive level manager and in relation to a lateral move to a position in South Carolina. (Emlen Dep. pp. 160-162).

It is obvious that neither Zachman nor Wienzeril are similarly situated to Plaintiff: neither employee was removed as a project manager from a failing project and neither employee was investigated for a code of conduct violation. *See Snipes v. Illinois Dept. of Corrections*, 291 F.3d 460, 463 (7th Cir. 2002) (noting that a similarly situated employee is one who "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." (citation omitted)). There is also no showing that either employee received a negative performance evaluation; indeed, Plaintiff admits that Wienzeril's evaluation was "good." Moreover, it is sheer and utter

speculation on Plaintiff's part that either of these employees were treated "favorably" because of their age. No reasonable jury would make the inference that Plaintiff was discriminated against on account his age based on the evidence before the Court.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendant, Caterpillar, Inc. (Doc. 21) is GRANTED.

CASE TERMINATED

Entered this 14th day of March, 2011

                                                                 s/ Joe b. McDade
                                                            JOE BILLY MCDADE
                            United States Senior District Judge